United States District Court
Southern District of Texas
**ENTERED**
February 23, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JOSUE C. GUTIERREZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B: 16-166 |
| | § | |
| STATE FARM LLOYDS, | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 19, 2016, Plaintiff Josue C. Gutierrez filed a complaint against Defendant State Farm Lloyd's Inc., in the 103rd District Court in Cameron County, Texas. Dkt. No. 1-3. Gutierrez alleges that State Farm breached the insurance policy by failing to fully cover damages to his home. Id.  On June 10, 2016, State Farm was served with the complaint. Dkt. No. 1-3, p. 19.  On July 1, 2016, State Farm timely removed the case to this Court. Dkt. No. 1.

On January 5, 2018, State Farm filed a motion for summary judgment. Dkt. No. 20. On January 25, 2018, Gutierrez filed a response. Dkt. No. 23.  State Farm filed a reply brief. Dkt. No. 26.  The motion for summary judgment is currently pending before the Court.

After reviewing the record and the relevant case law, it is recommended that the motion for summary judgment be granted.  Gutierrez has not shown a genuine dispute of material fact as to whether the damages to his home were covered by the policy.

## I. Background

### A. Factual Background

#### 1. Insurance Claims

Josue Gutierrez is a 66-year old disabled retiree who lives at his home on Alta Mesa Boulevard in Brownsville, Texas. Dkt. No. 23-9, p. 3.  State Farm issued homeowner's insurance policy 83-J0-6095-7, covering the home from the period of October 30, 2013 until

1

October 30, 2014. <u>Id</u>.  It also issued also renewed that policy for the period of October 30, 2014, through October 30, 2015, under the same policy number. <u>Id</u>.

On February 7, 2015, Gutierrez reported a loss to State Farm which he alleged occurred on June 2, 2014. Dkt. No. 20-1.  Gutierrez claims on June 2, 2014, he went to church in Matamoros and when he returned in the afternoon, it "was dark" outside. Dkt. No. 23-9, pp. 3-4. When he arrived home, his home "was full of water and the roof was leaking." <u>Id</u>.  Gutierrez stated that the roof was leaking into "the living room, from the entrance and the garage and everything." <u>Id</u>.  He claimed that the living room floor was wet, damaging the carpet. <u>Id</u>.  When asked why he waited so long to report the damage to State Farm, Gutierrez said "it just slipped by.  I – that's it. I don't remember." <u>Id</u>.  When asked if there was any impediment to him being able to report the claim to State Farm, Gutierrez replied, "No, it just slipped my mind.  There's no impediment." <u>Id</u>, p. 5.

Ron Castillo, a claims specialist for State Farm, inspected the property on February 16, 2015, nine days after the claim was made. Dkt. No. 23-5, p. 2.  On February 20, 2015, Castillo sent Gutierrez a letter, outlining his findings. <u>Id</u>.  Castillo found that there was some wind damage, totaling $1,006.04, which was less than the policy deductible of $2,498. <u>Id</u>. Castillo's letter states that he "observed additional damage not caused by wind," specifically "damage to shingles and other exterior roofing components." <u>Id</u>.  Castillo noted that the policy did not cover damages – regardless of whether the loss occurs "suddenly or gradually" – that occurred as a result of "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown" as well as by "wet or dry rot." <u>Id</u>, pp. 2-3; <u>see</u> <u>also</u> Dkt. No. 25-1, p. 13 (policy listing of non-covered losses).  Essentially, Castillo found that the non-wind damage was caused by normal deterioration of the home's roofing components.

On April 28, 2016, Gutierrez made another claim against his homeowners insurance. This time, he claimed that hail damaged his roof on June 2, 2014. Dkt. No. 20-1.  On May 9, 2016, Castillo inspected the property and found $289.30 worth of covered damage. Dkt.

No. 23-5.  Because that amount was less than the policy deductible of $2,498, there was no payment made to Gutierrez. Id.

Also on April 28, 2016, Gutierrez made a claim against his homeowners insurance, claiming that his home's foundation was damaged on February 15, 2015. Dkt. No. 20-1. That claim was apparently denied; no party has submitted evidence of the result of that claim or the reasoning behind the result.

## 2. Expert Testimony

Gutierrez has provided an expert, Gustavo Grajales, in support of his claims that the damage to his home was covered by the insurance policy. Dkt. No. 20-3.  Grajales works for Arroyo Construction and Maintenance in Harlingen. Id; Dkt. No. 23-4.

Grajales inspected the wind damage to the roof and the water damage throughout the home. Dkt. No. 23-4.  He concluded that the "reported damage overall is consistent with damage associated with a high wind, hail and rain event, such as storm event reported by owner." Dkt. No. 23-4, p. 4.  Essentially, Grajales found that the roof became compromised, which allowed water to enter into the interior of the home, including between walls. Id, p. 3.  Grajales found that the roof shingles were "uplift[ed]," which happens when the shingle is "bent up and back" by wind, compromising its ability to prevent water penetration. Id, p. 4.  Grajales found that it would cost $62,953 to repair all of the damage found in the home. Dkt. No. 23-4, p. 16.

Grajales was deposed as part of this case. Dkt. No. 23-11.  At the deposition, Grajales was asked if he knew what was caused the leak in the roof. Dkt. No. 23-11, p. 6.  He responded, "no." Id.  He testified that he inspected the shingles on the roof, but did not "determine what the condition was underneath where the tar was." Id.  When asked if he knew whether the damage was related to a storm, Grajales testified, "no," and that the only was to ascertain that would be to "remove the tar" and perform a "deconstructive test," which he did not perform. Id.

3

Grajales was asked if he had been "asked to pinpoint whether the damage at Mr. and Mrs. Gutierrez's home is related to the date of loss," i.e. whether the damage was caused by a storm in June 2014. Dkt. No. 23-11, p. 9.  He replied, "no." Id.

Grajales filed an affidavit in which he stated that, based on Gutierrez's prior insurance claims in 2003 and 2008, as well as evidence of hail in Brownsville in June 2013 and April 2015, he was of the opinion that the damages to the home were "caused during the policy period." Dkt. No. 23-12.

Grajales stated at his deposition that he had "no opinions" relating to the foundation claims. Dkt. No. 20-5, p. 37.

State Farm designated Mark Kubena as an expert on the cause of the damages to the Gutierrez home. Dkt. No. 20-7.  After inspecting the property, Kubena also reviewed weather data for the area for June 2, 2014. Id, p. 15.  Kubena found that the reported winds for that day could not have caused the damage to the roof shingles, which were consistent with "normal weathering" of the shingle tabs. Id, p. 16.  Kubena further found that the site of the water intrusion into the home was "indicative of improper installation of the valley metal or water intrusion at a nail penetration or lap seam in the valley metal flashing" and was "not the result of a weather created problem." Id, p. 17.  As of the filing of the motion for summary judgment and the response and the reply, it does not appear that Kubena was deposed in this case.

**B. Procedural History**

On May 19, 2016, Gutierrez filed a complaint against State Farm in the 103rd District Court in Cameron County, Texas. Dkt. No. 1-3. Gutierrez alleges that State Farm breached the insurance policy by failing to fully cover damages to his home and also violated the Texas Insurance Code and the Deceptive Trade Practices Act in denying his claims for damages. Id.  On July 1, 2016, State Farm timely removed the case to this Court. Dkt. No. 1.

On January 5, 2018, State Farm filed the instant motion for summary judgment. Dkt. No. 20. State Farm argues that Gutierrez cannot establish a genuine dispute of material fact as to whether his damages were covered by the policy, which is a necessary element of his claim. Id. State Farm further asserts that under Texas law, if the damages are not covered by the policy, then any extra-contractual tort claims – such as Insurance Code and Deceptive Trade Practices Act claims – necessarily fail as a matter of law. Id, p. 11.

On January 25, 2018, Gutierrez filed a response. Dkt. No. 23. In his response, Gutierrez argues that his own testimony about the damages as well as a sworn affidavit from Grajales[1] creates a genuine dispute of material fact as to the date of loss. Id, p. 8. Gutierrez further argues that he made insurance claims in 2003 and August 2008, so "[t]herefore, any damages beyond the minor fence issues, painting issues and shingles issues, described as light damage, is post 2008, damages associated with wind/hail." Dkt. No. 23, p. 6. The time frame between 2008 and 2014, when the first damage covered by the claims is alleged to have occurred, is not addressed.

Gutierrez further argues that State Farm is estopped from denying his claims because, under Texas law, "if an insurer assumes the insured's defense without obtaining a reservations of rights or a non-waiver agreement and with knowledge of the fact indicating noncoverage, all policy defenses, including those of coverage, are waived, or the insured may be estopped from raising them." Dkt. No. 23, p. 7 (citing Farmers Texas County Mut, Ins. Co. v. Wilkinson, 601 S.W.2d 520 (Tex. Civ. App. -Austin 1980)).

State Farm timely filed a reply brief. Dkt. No. 26.

---

[1] In his affidavit, Grajales states that based on Gutierrez's prior insurance claims in 2003 and 2008 as well as evidence of hail in Brownsville in June 2013 and April 2015, he was of the opinion that the damages to the home were "caused during the policy period."

5

## II. Applicable Law

### A. Diversity Jurisdiction

As relevant here, federal courts have jurisdiction over civil actions where (1) "the matter in controversy exceeds the sum or value of $75,000;"and, (2) the action is between citizens of different States. 28 U.S.C. § 1332(a)(1).  Gutierrez is seeking at least $75,000 in damages. Dkt. No. 4.  Furthermore, Gutierrez is a citizen of Texas and State Farm is an Illinois corporation. Dkt. No. 1.  No party disputes these facts. Dkt. No. 4.  Diversity jurisdiction is clear in this case.

"Because federal jurisdiction in this case is based on diversity of citizenship, the court must apply Texas law when determining substantive issues." Finnicum v. Wyeth, Inc., 708 F. Supp. 2d 616, 619 (E.D. Tex. 2010) (referencing Foradori v. Harris, 523 F.3d 477, 486 (5th Cir. 2008)). "If no state court decisions control, [a federal court] must make an 'Erie[2] guess' as to how the Texas Supreme Court would apply state law." Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009) (footnote added).

The Court, sitting in diversity jurisdiction, will apply Texas substantive law in this case.  That being said, the motion for summary judgment will be decided using the standard set established by FED. R. CIV. P. 56. Barrett Computer Services, Inc. v. PDA, Inc., 884 F.2d 214, 217 n 3 (5th Cir. 1989); C.R. v. American Institute for Foreign Study, Inc., 2013 WL 5157699, *3 (W.D. Tex. 2013) (unpubl.).  Thus, FED. R. CIV. P. 56 "governs the propriety of summary judgment in the present case." Royal Surplus Lines Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist., 404 F. Supp. 2d 942, 947-48 (S.D. Tex. 2005).

### B. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party

---

[2] Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001).  A material fact is one that might influence the outcome of the suit. Id.  Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008).  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752.  Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).  Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075.  "Evidence that would not be admissible at trial is not competent evidence to be considered during summary judgment." Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008) (unpubl.) (citing Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir.

1991)).  Unsupported affidavits "setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." Orthopedic & Sports Injury Clinic v. Wang Labs., Inc., 922 F.2d 220, 225 (5th Cir. 1991) (quoting Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir. 1985)).

Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

### C. Breach of Contract

Under Texas law, "insurance policies are contracts." Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008).  Thus, when interpreting an insurance policy, the Court employs "the rules of contract construction." Trahan v. Fire Ins. Exch., 179 S.W.3d 669, 673 (Tex. App. 2005).

"In a case claiming breach of an insurance contract, the plaintiff must show coverage, that the contract was breached, that the insured was damaged by the breach, and the amount of resulting damages." Metro Hosp. Partners, Ltd. v. Lexington Ins. Co., 84 F. Supp. 3d 553, 569-70 (S.D. Tex. 2015) (citing Block v. Employers Cas. Co., 723 S.W.2d 173, 178 (Tex. App.-San Antonio 1986), aff'd, 744 S.W.2d 940 (Tex. 1988)).  The insured has the burden to plead and prove that the insurance policy covers the benefits sought. Id.

In establishing coverage, Texas law mandates that the insured must prove that "the claimed losses occurred during the policy period;" this is considered "an essential element" of the claim. Stagliano v. Cincinnati Ins. Co., 633 F. App'x 217, 219 (5th Cir. 2015) (quoting New Hampshire Ins. Co. v. Martech USA, Inc., 993 F.2d 1195, 1200 (5th Cir. 1993)).  Thus, the plaintiff must "come forward with some evidence or indication that the damage to [insured property] was caused by the [claimed storm], and not another storm occurring outside the policy period." Stagliano, 633 F. App'x at 219.

In order to meet its burden, the plaintiff cannot rely on "unconfirmed rumors of loss" or "a single conclusory expert affidavit, devoid of any factual support or explanation of the expert's basis for concluding that observed damage occurred as a result of a particular hail storm within the policy period," in order to defeat a motion for summary judgment. Stagliano, 633 F. App'x at 219.

### D. Extra-Contractual Claims

As in this case, a plaintiff can raise extra-contractual tort claims – such as violations of the Texas Insurance Code or the Deceptive Trade Practices Act – against an insurance company for the denial of benefits. Progressive Cty. Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 920 (Tex. 2005). However, if the Court finds that there was no underlying insurance coverage for that particular claim, then the extra-contractual claims also necessarily fail. State Farm Lloyds v. Page, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive.").

## III. Analysis

As previously noted, Gutierrez has raised claims for breach of contract, violations of the Deceptive Trade Practices Act, and violations of the Texas Insurance Code based on State Farm's denial of his insurance policy claims. In his complaint, he states that these claims arise out of his insurance policy claims related to the wind and water damage to his roof and dwelling on June 2, 2014, and his claim that his foundation was damaged on February 15, 2015. Dkt. No. 1-3, p. 4.

The Court will first examine whether Gutierrez can sustain a breach of contract claim for any of his insurance claims and then whether he can sustain any of his extra-contractual claims.

**A. Breach of Contract**

    **1. Wind & Water Damage**

In two separate claims, Gutierrez has alleged that his home was damaged by wind and water on June 2, 2014. Dkt. No. 1.  Despite the assertions, he has failed to show a genuine dispute of material fact as to every element of his claim.

As set forth earlier, the first element of Gutierrez's breach of contract claim is to establish that the insurance policy covers the event in question. Metro Hosp. Partners, 84 F. Supp. 3d at 569-70.  Gutierrez has not shown a genuine dispute of material fact as to this element.

As relevant here, the insurance contract clearly states that it does not cover damages – regardless of whether the loss occurs "suddenly or gradually" – that occurred as a result of "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown" as well as by "wet or dry rot." Dkt. No. 25-1, p. 13 (policy listing of non-covered losses).  The contract clearly covers "accidental direct physical loss" to the property, so long is it caused by something other than one of the events listed above. Id, p. 11.  Thus, the contract provides coverage depending upon the cause of the damage, rather than merely its existence.

Gutierrez has the burden at trial of establishing that the "damages are covered by his policy." Seger v. Yorkshire Ins. Co., 503 S.W.3d 388, 400 (Tex. 2016), reh'g denied (Dec. 2, 2016).  Accordingly, Gutierrez must create a genuine dispute of material fact to show that the damage of June 2, 2014, was not caused by wear and tear and general deterioration of his home, but rather by an "accidental direct physical loss."  Gutierrez has not met this burden.

Gutierrez has cited the testimony of his expert witness, Grajales, in support of his claim.  Grajales' testimony, while attesting to the nature of the damage, does not establish how the damage was caused in this case.

Grajales was asked during his sworn deposition if he knew what was caused the leak in the roof. Dkt. No. 23-11, p. 6.  He responded, "no." Id.  He testified that he inspected the

shingles on the roof, but did not "determine what the condition was underneath where the tar was." Id.  When asked if he knew whether the damage was related to a storm, Grajales testified, "no," and that the only method to ascertain whether the damage was storm related would be to "remove the tar" and perform a "deconstructive test," which he did not perform. Id.

As far as any damages to the window frames of the home, Grajales was asked if he could attribute that damage to any events in 2014. Dkt. No. 23-11, p. 7.  He replied, "at this point, no." Id.

Grajales was asked if he had been "asked to pinpoint whether the damage at Mr. and Mrs. Gutierrez's home is related to the date of loss," i.e. whether the damage was caused by a storm in June 2014. Dkt. No. 23-11, p. 9.  Again, he replied, "no." Id.

Grajales filed an affidavit which stated that based on Gutierrez's prior insurance claims in 2003 and 2008 as well as evidence of hail in Brownsville in June 2013 and April 2015, he was of the opinion that the damages to the home were "caused during the policy period." Dkt. No. 23-12.

Grajales's affidavit and deposition testimony are insufficient to create a genuine dispute of material fact that the damages were covered by the insurance policy.  His affidavit amounts to little more than a conclusory assertion.

In a very similar case, the Fifth Circuit held that an expert's affidavit on the cause of the damages from a storm was insufficient to create a genuine dispute of material fact. Stagliano, 633 F. App'x at 221.

In Stagliano, the plaintiff had an expert witness, who stated in a sworn affidavit that he had inspected the property at issue and that "based on my background, experience and evaluation of the meteorological events relating to this matter, hail did in fact occur on" the date in question and that "such hail was consistent with such damages I personally observed." Stagliano, 633 F. App'x at 218.

11

The Fifth Circuit found that the expert's affidavit "was little more than an allusion to his credentials, a recitation of the hail damage observed, and a conclusory, 'subjective opinion' that the damage resulted from a hail storm within the policy period." Stagliano, 633 F. App'x at 220.  The Fifth Circuit put great weight on the fact that the affidavit failed to set out "specific factual details connecting the damage to the . . . hail storm," and that the affidavit failed "to delineate any principles or methodology" that were used to arrive at the conclusion. Id at 221.

In his affidavit, Grajales does not lay out any principles or methodology used to conclude that the damages were caused by a covered event within the policy period.  Indeed, his affidavit appears to contradict his deposition testimony, where he stated that he had not been asked to pinpoint the cause of the damages to the home. Dkt. No. 23-11, p. 9.  It also contradicts the portion of his testimony where he said that he could not specify the cause of the damages to the roof without performing a deconstructive test – which the affidavit does not state that he performed. Dkt. No. 23-11, p. 6.  It also contradicts the portion of his deposition testimony where he states that he was unable to attribute the damage to the window frames to any particular event during the policy period. Dkt. No. 23-11, p. 7.

To the extent that Grajales' affidavit conflicts with his deposition testimony, it is not sufficient to defeat summary judgment. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 346 (5th Cir. 2007); K. S. v. Nw. Indep. Sch. Dist., 689 F. App'x 780, 786 (5th Cir. 2017).

Grajales's deposition testimony, as laid out above, gives no basis to conclude that the damage to the home was caused by a covered event as opposed to wear and tear, which is clearly not covered by the policy.  As in Stagliano, Grajales offers no basis for a fact-finder to conclude that the damage was covered under the policy.

Gutierrez, in his reply brief, argues that his own testimony of the events of June 2, 2014, is sufficient to defeat summary judgment. Dkt. No. 23, pp. 5-6.  This argument is misplaced.

Gutierrez testified that he spent the day in Matamoros and when he returned, the home "was full of water and the roof was leaking." Dkt. No. 23-9, p. 4.   Gutierrez cites to Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), to establish that the insured's testimony can be sufficient.

Gutierrez misses one key factual difference between the instant case and Employers Cas. Co; in the latter case, there was additional evidence of causation, which is not present in this case.  In Employers Cas. Co., the plaintiffs left for vacation with their house intact and while they were gone, a hurricane struck the home.  The plaintiff's remodeling contractor testified that he has was contacted by the family right after the hurricane struck and noted that "the water standing under the wood floors was clear, rather than stagnant, which led him to conclude that the damage was caused by the rains associated with hurricane Allen." Employers Cas. Co., 744 S.W.2d at 944 (Tex. 1988), disapproved of on other grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996).  Thus, the contractor's testimony helped establish that the damage was caused by the hurricane as opposed to wear and tear.

It is not enough for Gutierrez to simply testify that the home appeared intact when he left and was damaged when he returned; this argument goes to the nature of the damages, not the cause, which is the predicate for coverage.  Gutierrez must show that the resulting damage was caused by a covered event within the policy period. Seger, 503 S.W.3d at 400. Neither Gutierrez's or Grajales' testimony creates a genuine dispute of material fact to show that the damage was caused by a covered event, negating the first element of Gutierrez's claim.

Furthermore, Gutierrez's argument that State Farm is estopped from denying his claims is frivolous.  Gutierrez asserts that because State Farm in 2003 and 2008 fully paid on damage claims under the insurance policy, it is not permitted to deny coverage of the current claims based on whether coverage exists for these claims.

The case cited in support of this argument – Farmers Texas Cty. Mut. Ins. Co. v.

13

Wilkinson, 601 S.W.2d 520, 521 (Tex. Civ. App. 1980), writ refused NRE (Feb. 11, 1981), and abrogated by Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773 (Tex. 2008) – is factually inapplicable to this case.  In Wilkinson, the insured was in a motor vehicle accident and the insurance company initially sent a letter saying that it would defend the insured and later sent another letter, which attempted to retain the right to claim that it was not required to defend.  Id.  The Texas appellate court concluded that the insurance company was estopped from retaining the right not to defend the insured, based upon the first letter, where it had unconditionally agreed to defend. Id.

The holding in Wilkinson has since been abrogated by the Texas Supreme Court. Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 782 (Tex. 2008).  To whatever extent that Wilkinson may still be valid law, it does not apply to this case.  The rule in Wilkinson was to prevent an internal conflict, where the insurance company defended the insured, but nevertheless sought a declaratory judgment that it was not required to defend the insured. Wilkinson, 601 S.W.2d at 522.  Those concerns are not present in this case.

Gutierrez has not cited any applicable case law for the proposition that, because the insurance company paid out on prior claims, it is estopped from denying any later claims. Such an argument would not appear to be supported by any statute, case law, or even sound public policy.

There is no evidentiary basis in the record to show a genuine dispute of material fact as to whether the damages in this case were caused by a covered event.  Failure to show a genuine dispute of material fact as to any element of the claim requires that summary judgment be granted. Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 349 (5th Cir. 2001).  Thus, summary judgment should be granted to State Farm as to this claim.

### 2. Foundation Claim

Gutierrez filed a claim that his foundation was damaged on February 15, 2015.  He cannot establish that this claim was covered by the insurance policy.

Grajales stated at his deposition that he had "no opinions" relating to the foundation

claims. Dkt. No. 20-5, p. 37.

Gutierrez testified that there were cracks in the walls and ceilings in his home due to the foundation. Dkt. No. 20-4, p. 11.  When asked if those cracks existed prior to February 15, 2015, he responded, "I don't remember." Id.

There is simply no basis in the record to conclude that the damages to the foundation were caused by a covered event during the policy period, as opposed to wear, tear and deterioration.  Accordingly, summary judgment is appropriate as to this claim.

### B. Extra-Contractual Claims

Gutierrez has alleged that State Farm's denial of his claims violated the Deceptive Trade Practices Act and the Texas Insurance Code. Dkt. No. 1.  As with the other claims, summary judgment is appropriate as to these claims.

As previously noted, if the Court finds that there was no underlying insurance coverage for a particular claim, then the extra-contractual claims also necessarily fail. State Farm Lloyds, 315 S.W.3d at 532 ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive.").  Given that Gutierrez has not shown a genuine dispute of material fact as to coverage in this case, all of his extra-contractual claims necessarily fail.  Summary judgment is appropriate as to all of the extra-contractual claims.

## IV. Recommendation

It is recommended that State Farm's motion for summary judgment be granted, Dkt. No. 20.

It is further recommended that judgment be entered for State Farm as to all of Gutierrez's claims and that Gutierrez take nothing, with each party responsible for its own fees and costs.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge.  28 U.S.C. § 636(b)(1) (eff. Dec.

1, 2009).  Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

     DONE at Brownsville, Texas, on February 23, 2018.

_____
Ronald G. Morgan
United States Magistrate Judge

16